Me. Justice Cox
delivered the opinion of the Court:
, The bill in this case was filed by Margaret Capron, widow and executrix of Plorace Capron, asking the Court to construe the will of her husband. The provisions of the will we are called upon to consider are as follows: “It is my will that the income from $15,000 in -registered Government bonds of the United States shall be subject to the order and at the disposal of my beloved wife, Margaret; during her natural life, subject to a condition hereinafter to be named.” A further provision is: “It is also my will that on the demise of my beloved wife, Margaret, or in thé event she should marry again, the bonds of the United *344 States Government set apart for her benefit in this will shall revert in equal amounts to my son, Albert, and my daughter, Elizabeth, or their heirs in case of the death of either my son or daughter.” Then this further provision: “ It is also my will that the income from $6,000 in Government registered bonds of the United States shall be set apart and appropriated for the maintenance and support of my poor unfortunate son, Osmond, during his natural life. The interest to be collected and disbursed under the direction of his brother, Albert, who I intrust with this delicate duty, with the full hope that it will be faithfully done for the greatest comfort of his poor brother. * .* * It is further my will that in the case of my son, Osmond, dying without issue, the United States bonds set apart for his use shall reveid back to my son, Albexd, and daughter*, Elizabeth, ixx the same maxxner as ixx the case provided for those to my wife.”
In other words, there was a life interest in $15,000 given to the wife in full of her interest in the estate, with the exception I shall presently mention, and a life ixiterest in $6,000 given to the son Osxnond, with a future ixxterest in both funds to the son, Albert, and daughter, Elizabeth, after the deaths of the widow and Osmoxxd. The daughtex’, Elizabeth, died dux’ing the life-time of the testator; but there is a provision in the will which prevents her legacy from lapsing, because it says it shall revert “to my son, Albeit, axxd daughter, Elizabeth, or their heirs, in case of the death of either xny son or daughter; ” so that the representatives, the next of kin, it beixxg personal property, are the successor’s to the daughter’s share.
There is one other provision of the will to be noticed: “Of the many curios collected in Japan I desire my beloved wife to take such as she most desires to keep for her own special use, and that she will divide the remaining articles between my son Albert and my daughter Elizabeth, now *345 Mrs. G. G. Mayo; and I feel well assured that my good wife will do exact and impartial justice.”
As to the share of these curios given to Mrs. Mayo there is a lapse of that legacy. There is no- provision that in case of her death it shall go to her representatives; so that that becomes a part of the general estate/to be disposed of according to the residuary clause in the codicil.
The first question presenting itself is whether these legacies are specific legacies, or what the law calls general or pecuniary legacies; that is, were they specific bequests of so many United States bonds owned by him, or were they bequests of so much money to be laid out in Government bonds? The question is very material, for this reason:
At the time the will was executed, the testator was the owner of some $12,800 of Government bonds, and he afterward acquired others, swelling the amoirnt to $18,800. But before his death he disposed of the whole of them, so that when he died he did not own any Government bonds. If these are to be treated as specific bequests of the bonds he owned, the legacies are adeemed, i. <?., revoked by operation . of law.
On the other hand, if these are to be considered bequests of so much money to be laid out in Government bonds then the legacies are not affected by the disposition, made by the testator in his life-time, of the bonds that he owned at the time the will was executed or afterwards acquired; and the legacies must be paid if the condition of his estate permits it.
We are of opinion that these are what the law calls general or pecuniary legacies. The law seems to be very clear that when a testator bequeaths “my Government bonds,” “my consols,” etc., the legacy is specific; and if the testator disposes of them in his life-time, the legacy becomes inoperative as to those.
On the other hand, if the will bequeaths Government *346 bonds or consuls, thar is a pecuniary legacy. If it bequeaths $10,000 of consols or bonds of any description, that means that that property is to be provided for out of the estate, by the application of so much 'money as ■ may be necessary to do it.
It is to be remarked that this interpretation of the legacy is not affected by the fact that at the time, the testator owned the very kind of securities he speaks of. It is a direction that out of his estate, whether he owns the securities at the time or not, it shall be provided for by the moneys that he leaves. Of course, if he has securities they can be applied; if not, money may be applied "to the purchase of them. It does not make any difference whether he had the securities at the time of making the will, or acquired them between that time and the date of his death, or never had them at all. If, by the terms of the will, the bequest is a pecuniary or general legacy, it must be paid by the executor, whether there are securities in the estate of the kind denominated in the will or not.
Of course the case would be still stronger if the testator did not own the securities described and which he undertakes to bequeath; and that consideration is applicable to the case because the testator, at the time the will was executed, owned $12,800 of Government bonds, and undertook to dispose of $21,000 and odd.
Another circumstance, however, has intervened which breaks up to some extent the scheme of the will; the will bequeaths the interest of $15,000 to the wife, in full of all her claims upon the estate, with the exception of the curios from which she was authorized to make a selection. But the widow renounced the provision made for her in the will, and chose to stand upon her legal right and take one-third in specie of the whole personal estate. The consequence of this can be best illustrated by supposing that the amount of money left by the testator was just enough to provide for these two legacies; that is, $15,000 for one, and *347 $6,000 for the other. The first consequence of this step by the widow is that, having taken out of the $15,000 fund everything she is entitled to, the remainder becomes the absolute property of the son Albert and the daughter Elizabeth. There is, therefore, no occasion for deferring payment to them until the widow’s death; and it becomes payable to them immediately.
The other consequence is that if enough is not left of the personal property to pay the two legacies in full, they must abate in proportion, and the widow would be entitled to take $5,000 out of the $15,000 legacy, and $2,000 out of the $6,000 legacy. The balance $10,000 from the first legacy would have to be given to Albert and Elizabeth, and the balance of the next legacy, $4,000, -would have to be invested for the benefit of the son Osmond.
We are not advised exactly of the condition of the entire estate. If the condition of the estate admits it, the whole $15,000 which was bequeathed to the wife for life with remainder to Albert and the daughter' would be payable to them, and $6,000 should be invested for the benefit of the son Osmond.
If the estate is not sufficient to pay in full, then it would have to be divided into two parts bearing the ratio of six-to fifteen, The sum represented by the latter would' be payable immediately to Albert and his neices; the sum represented by the former would have to be invested for the benefit of Osmond.
One-third of the curios bequeathed to Mrs. Mayo become also available for the payment of these legacies, if there is not sufficient from the rest of this estate to pay them in full.
That is about all we can say at present, without further information with regard to the estate.